# EXHIBIT B

## AFFIDAVIT

I, **TROY M. PLANTE**, having first been sworn, do hereby depose and state as true the following:

1. I testified as a witness in a case styled United States of America v. Robert Ethan Miller, Jr., United States District Court Northern District of Georgia Atlanta Division, Case Number 1:97-CR-496-01-0DE(s).

2. I am currently incarcerated in the Florida Department of Corrections at New River Correctional Institution "O" unit.

3. My inmate number is V00070 and my date of birth is May 10, 1968.

4. I am currently serving a minimum mandatary sentence of three (3) years for the offense of possession of firearm by a convicted felon.

5. I first became acquainted with Robert Ethan Miller, Jr. while incarcerated in Cobb County, Georgia.

6. Mr. Miller and I were placed in the same cell, which was shared by a number of other persons.

7. At the time of my incarceration in Cobb County, I was charged with grand theft.

8. I initiated contact with the United States Secret Service through my court appointed attorney, whom I advised that Mr. Miller had been making certain statements and overtures to me in the county jail.

9. I met with agents of the Secret Service and advised them that Mr. Miller had attempted to procure my services to kill Jennifer Diane Ashford, who was or had been his girlfriend and was the mother of his child.

10. After advising the United States Secret Service that Mr. Miller had requested that I cause the death of Jennifer Diane Ashford, I was released from the Cobb County jail and at various times was requested to wear a wire or other recording equipment and record conversations with Mr. Miller and others.

11. To the best of my knowledge the recordings never revealed any information other than circumstantial or tangential to the attempt/solicit of murder charges.

*T.M.P.*

12. Pursuant to my representations to the United States Secret Service and the United States Attorney's Office, Mr. Miller was charged the solicitation to commit murder and attempt to commit murder.

13. Mr. Miller paid for or arranged the payment for the bond which was required for my release from the Cobb County Jail. The Secret Service allowed my to keep the bond money for my personal use.

14. Subsequent to my release from the Cobb County Jail, I relocated to the State of Florida in the St. Augustine area.

15. At the time of trial, the US Government paid for my transportation to Atlanta and my lodging there.

16. During the course of my trip to Atlanta, the U.S. Government arranged for payment of several hundred dollars per day during my stay.

17. Upon demand of the government, I traveled to Georgia approximately two (2) weeks prior to the scheduled trial.

18. During that time, on approximately ten (10) to fifteen (15) occasions, I was transported to the U.S. Attorney's Office and instructed to listen to my previously recorded statement in order to refresh my memory in preparation for trial, so that there not be a deviation in my testimony from the statements given on the recording.

19. At trial, I testified in a manner consistent with my recorded statement and followed the instructions of the U.S. Attorney to not deviate or depart from the substance of the recorded statement.

20. My testimony at the trial was that Robert Ethan Miller, Jr. did solicit or attempt to solicit my participation in the murder or unlawful killing of Jennifer Diane Ashford. I was to perform the killing and disposal of the body.

21. The statement given to the United States Secret Service and its agents, the grand jury, and the U.S. Attorney, where incorrect, misleading, and fabricated.

22. In fact, Robert Ethan Miller, Jr., at no time mentioned any desire or intention to cause bodily injury or to kill Jennifer Diane Ashford.

23. This statement and those statements connected to this allegation were fabrications on my part.

*T. M. P.*

24. These fabrications were relayed to the various United States officials because I saw an opportunity to concoct a story, which if believed by the government, might result in a reduction of sentence or some consideration concerning my grand theft charge.

25. My child and the mother were living on the street and needed the help I could provide if released from custody.

26. I believed at the time that I was facing three (3) years incarceration for the grand theft charge that was pending against me.

27. Ultimately, following my cooperation with the government, I received probation for the grand theft charge. The probationary sentence was a reward for my incriminating testimony against Mr. Miller.

28. One of the items of evidence that I provided to the government as corroboration for my story was a map showing where the alleged intended victim, Jennifer Diane Ashford, was located.

29. Mr. Miller did in fact provide information concerning her whereabouts and the place which she could be located, but this information was not provided in connection with any plot, attempt, effort, or desire on the part of Mr. Miller to cause or anyone else to cause harm to Ms. Ashford.

30. Mr. Miller provided the location information and I drew the map. My testimony that he drew the map was untrue.

31. Mr. Miller had requested that I perform certain tasks for him which would entail contact with Ms. Ashford, and that was the purpose for the directions or map.

32. To the best of my knowledge, in fact, Ms. Ashford visited Mr. Miller while he was incarcerated at the Cobb County Jail.

33. Mr. Miller did discuss with me performing certain actions, such as moving stolen property and drugs in exchange for which he would pay my bond and, ultimately, after all the tasks where completed, the sum of $5,000.00.

34. While it is true that Mr. Miller requested my involvement in certain other criminal activity, in my estimation, the disclosure to the government of such overtures would not be sufficient to interest the government in using me as an informant.

T. M. P.

35. Accordingly, I distorted some of the facts to fit into a fabrication of solicitation to commit murder.

36. For example, I testified that the duffle bag would be used to dispose of Ms. Ashford's body. In fact, the purpose of the duffle bag would have been for the transportation of marijuana.

37. However, none of these activities contemplated any violence or harm to any person, including Jennifer Diane Ashford.

38. Prior to the time of trial, I expressed my reluctance to the government to testify as a witness in this case. My reluctance was based in large part on the fact that my testimony was untrue as the same related to the contemplation or commission of murder or causing the death, or injury to any person.

39. The response of the government to my reluctance was that if I failed to testify in accordance with my previous statements, I would be sentenced to prison on the grand theft charges and would be charged as a co-conspirator in the contemplated and/or attempted murder of Jennifer Diane Ashford.

40. In addition, to the previously mentioned sums paid, the government provided me over $300.00 to obtain clothing for the trial.

41. I was instructed to purchase outfits which would make me look like "street person", or a killer. The outfits were to be cut so that my tattoos would be prominently displayed for the jury. I have tattoos on my arms, upper arms and torso which the government indicated would cause the jury to believe that I was a likely accomplice in an act such as murder.

42. I continued the fabrication of my story because I did not want to be charged as a co-defendant with Mr. Miller, nor be sent to prison on the original charge of grand theft in Cobb County.

43. At no time was I interviewed by Mr. Miller's attorney or investigator prior to trial.

44. At no time did I offer the U.S. Government a statement of the genuine truth.

45. Despite attempts by the U.S. Government, no other person in that cell could or did corroborate my fabricated story.

46. I am making this statement freely, knowingly, and voluntarily. I understand that the attorney that has prepared this affidavit represents Mr. Miller and does not represent me, and that I have the right to independent counsel and representation, which I waive for the purpose of making this affidavit.

47. No representation has been made to me by the attorney drafting this affidavit, or by any other person, that my legal position will not be adversely affected or impacted in making these statements, or that I cannot be charged in connection therewith.

48. My motives in executing this affidavit include the following:

    A. I wish to clear my conscience in that my false testimony has caused Mr. Miller to serve a lengthy prison sentence for acts or actions which he did not commit; and

    B. The fact that he was given a significant sentence for the charges involving the contemplated death of Jennifer Diane Ashford have caused a separation between him and his child, the mother of whom is Jennifer Diane Ashford.

49. Further affiant sayeth not.

**STATE OF FLORIDA**
**COUNTY OF** _Bradford_

I have read the foregoing and under penalties of perjury it is accurate and complete to the best of my knowledge and belief.

_Troy M. Plante_
**TROY M. PLANTE**

Affirmed before me, on _7-14-05_, by **TROY M. PLANTE**:
[ ] who is personally known to me, or
[✓] who produced the following identification: _Doc ID_

**TROY M. PLANTE** personally appeared before me at the time of notarization, and, after being given the oath, acknowledged signing the foregoing document.

_____
Notary Public
Notary Stamp:

JOHN E. MAINES, IV
Notary Public, State of Florida
Commission # DD 153666
Expires October 12, 2008

Affidavit of Troy M. Plant
In Re: Robert Ethan Miller, Jr.
Page 5 of 5

_T.M.P._