FILED IN CHAMBERS
U.S.D.C. Atlanta

AUG 25 2008

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

ROBERT ETHAN MILLER

CRIMINAL CASE NO.

1:97-cr-496-ODE

### ORDER

This criminal case in which Defendant filed motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is before the Court pursuant to an Order of remand by the United States Court of Appeals for the Eleventh Circuit entered May 16, 2007, for the limited purpose of allowing the district court to conduct such evidentiary hearing and to reconsider its order granting [Defendant's] request for a certificate of appealability. Following evidentiary hearings and upon reconsideration, Defendant's Motion for Certificate of Appealability is DENIED.

I.   Background

A.   Procedural background

Defendant Robert Ethan Miller was convicted on June 26, 1998, of two counts of manufacturing and distributing counterfeit currency under 18 U.S.C. §§ 471 and 473; one count of solicitation to kill a witness, in violation of 18 U.S.C. §§ 373 and 1512; and one count of attempting to murder a witness, pursuant to 18 U.S.C. §§ 1512(a)(1)(A) and 2.  Miller was sentenced on October 2, 1998, and the appeal of his conviction was affirmed by the United States

Court of Appeals for the Eleventh Circuit.   United States v. Miller, 202 F.3d 287 (11th Cir. 1999).

On July 14, 2006, Miller filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence based on newly discovered evidence and ineffective assistance of counsel. [Docs. #153; #154]. In short, Miller alleged that the Government's witness, Troy Plante, committed perjury during the trial.[1] On July 21, 2006, the Court denied the § 2255 motion as untimely. [Doc. #156]. On September 21, 2006, Miller petitioned for a certificate of appealability [Doc. #160], and the Government responded on October 12, 2006. [Doc. #164]. The Court, by order dated October 25, 2006, granted Miller's petition for a certificate of appealability, in part, with respect to the issue of newly discovered evidence. [Doc. #165]. The Court noted that it is "unclear from the face of the pleadings whether the one year period as to . . . [the newly discovered evidence] claim expired before the motion was filed." [Doc. #165, at 1-2].

On November 2, 2006, the Government moved the Court to reconsider its Order granting Miller's certificate of appealability. [Doc. #168]. The Court subsequently denied this motion for reconsideration on December 6, 2006, on jurisdictional grounds. [Doc. #170]. Approximately two months later on February 5, 2007, the Government requested that this Court certify to the Eleventh Circuit that it would hold further evidentiary hearings to make factual determinations as to when Miller became aware of

---

[1]   The Court will set out the facts relating to Plante's testimony and alleged perjury after outlining the remainder of the procedural history.

the alleged "newly discovered evidence" forming the basis of his 28 U.S.C. § 2255 petition. [Doc. #177]. On March 16, 2007, the Eleventh Circuit, on the Government's motion, stayed the appeal for this Court's consideration of the Government's pending request for certification. [Doc. #178]. This Court then certified to the Eleventh Circuit on April 27, 2007, that it would hold an evidentiary hearing to determine the timeliness of Miller's § 2255 petition. [Doc. #179]. Subsequently, on May 17, 2007, the Eleventh Circuit remanded the case for the "limited purposes of allowing the district court to conduct such evidentiary hearing and to reconsider its order granting" Miller's request for a certificate of appealability. [Doc. #182].

On August 3, 2007, the Court held an evidentiary hearing, and Miller testified as to the newly discovered evidence and how he came to know that the Government's former witness, Troy Plante, wanted to recant his testimony. See [August 2007 Hearing Transcript (hereinafter "August Hearing")]. John Maines, the attorney who took Troy Plante's affidavit, also testified before the Court on October 5, 2007. See [October 2007 Hearing Transcript (hereinafter "October Hearing")]. Finally, on January 25, 2008, Troy Plante testified as to the particulars of his recanted testimony. See [January 2008 Hearing Transcript (hereinafter "January Hearing")]. Both sides filed exhibits and post-hearing briefs.

B.  Factual background

According to Miller, he knew that Plante was lying "from the beginning" when he heard Plante would testify against him at the trial in late 1997. [August Hearing, at 9]. After his conviction

3

and spending several years in prison, Miller became increasingly
despondent about the lack of a relationship with his son and wanted
his son to know that he had not attempted to kill Jennifer Ashford,
Miller's ex-wife.[2]   Id. at 19.   In or around late 2004 or early
2005, Miller wrote a letter to Troy Plante in an attempt to
"appeal[] to his conscience" and asked Plante to recant his
testimony.   Id. at 12.   Shortly thereafter, Plante responded to
Miller by letter, stating that he "felt terrible" about testifying
falsely against Miller at trial.[3]   Id. at 12-13.

Miller sought financial and legal assistance from friends in
the hope that Plante would indeed recant his story.       [August
Hearing, at 13].   One such friend was a man identified as Michael
Mullens.   Miller testified that after he learned of Plante's
recantation, "an attorney was hired to go visit Mr. Plante."   Id.
Some time in January 2005, Mullens contacted, via telephone, an
attorney in Florida by the name of John Maines.   [October Hearing,
at 60].   Mullens told Maines that he wanted him to secure the
affidavit of an inmate, Troy Plante, who was incarcerated with the
Florida Department of Corrections.   Id. at 59-62.   Mullens
indicated that Plante wanted to recant the testimony he gave at
Miller's trial, and that Miller was interested in securing an
affidavit from Plante so that he could file a post-conviction

---

[2]   Jennifer Ashford is also the mother of Miller's son.
[August Hearing, at 18-19].

[3]   There is conflicting testimony as to whether Plante or
Miller initiated communications.   Plante testified that he
initiated communications [January Hearing, at 131], while Miller
testified that upon learning Plante was in prison, he "wrote him
a letter."   [August Hearing, at 12].

4

petition for relief. Id. at 64-65. Maines speculated that Mullens contacted him because, at that time, he was the only attorney practicing in Union County, Florida, and was geographically probably the closest attorney to the New River Correctional Facility, where Plante was located. Id. at 60. In any event, Maines never personally met Mullens and only communicated with him over the telephone, email, and other correspondence. Mullens indicated that he had been friends with Miller for a long time and paid for his legal services. [October Hearing, at 62].

After retrieving some background information about the case from Mullens, Maines went to the New River Correctional Facility and met with Plante on February 9, 2005. [October Hearing, at 63-66]. Upon meeting Plante, Maines first verified his identity. Id. at 66. The two then discussed the specifics of Plante's testimony. Id. Plante recanted his testimony. Id. Maines recorded on a cassette tape the first thirty minutes of the conversation, but the tape ran out before their conversation concluded. Id.; see Gov't Exhibit 25. Upon finishing the interview with Plante, Maines returned to his office and prepared a draft of the affidavit that very afternoon. Id. at 68-69. One week later, on February 16, 2005, Maines sent Plante three affidavits, one original and two copies. Id. at 69-70. Maines requested that Plante execute the affidavits and return them in the envelope provided. Id. at 69-70, 79-80. See Gov't Exhibit 15.

All the while Mullens maintained contact with Maines. [October Hearing, at 70-71]. Mullens, and various "pen-pals", acted as the conduit through which Miller communicated with the

outside world.  Maines never spoke directly with Miller.  [August Hearing, at 16; October Hearing, at 74].

By March 2005 Miller knew that Maines had met with Plante, that they discussed Plante's testimony and that the conversation had been recorded.  [August Hearing, at 15].  Sometime in March 2005, Miller received an unsigned copy of Plante's affidavit in the mail.  Id. at 16.  Miller estimates that he received this copy around the first week of March 2005.  Id.  According to his testimony, Miller believed that the affidavit he received, in which Plante recants his trial testimony, had been prepared based on the interview Maines had conducted with Plante in February 2005.  Id. at 16.  When posed with the following question at the evidentiary hearing, "Now, when you received the affidavit that was prepared by Maines, even though unsigned, did you have reason to believe that it was truthful?", Miller replied, "I felt like it was truthful, yes."  Id. at 18.  Miller then had his prison cellmate sign the unsigned affidavit as Troy Plante. Id. at 20.  Subsequently, Miller sent the forged affidavit, dated March 13, 2005, to his mother, along with letters addressed to his former in-laws, the Woodworths, and to the victim and his ex-wife, Jennifer Ashford.  Id. at 17-18.  Miller's mother then forwarded these items to the intended recipients.[4]  Id. at 18.  Miller testified that he was concerned about his child and wanted to have a relationship with him.  Id. at 19-22, 25-26.  He sent this correspondence to

_____

[4]    Apparently, Miller was forbidden from communicating with either the Woodworths or Ashford, and therefore attempted to contact them through his mother.  [August Hearing, at 18].

demonstrate that he was in fact innocent, and he believed sending the forged Plante affidavit would boost his credibility. Id.

Returning to the developments in Florida, Plante had yet to return signed copies of the affidavits to Maines. On March 7, 2005, Maines received a voice message from Mullens, stating, "Please push Plante." [October Hearing, at 70]. Maines subsequently visited Plante for a second time at prison on March 24, 2005. Id. at 72. At this juncture, Plante indicated that he did not wish to execute the affidavit. Id. at 73. When Maines inquired as to the reason why, Plante informed him that the affidavit did not need to be changed but that he was concerned about the repercussions that might result from signing it. Id. at 92-93. Maines terminated the meeting and subsequently informed Mullens that Plante did not want to sign the affidavit. Id. at 74. On March 30, 2005, Maines sent a copy of the tape recording of his February 9, 2005, interview to Mullens. Id. at 75. Mullens conveyed the message to Miller that Plante was no longer interested in signing the affidavit.

The following month, in April 2005, Susan James, an attorney, was retained to represent Miller in all post-conviction matters.[5] [August Hearing, at 8]. Miller advised her that he was attempting to secure some evidence that would help to exonerate him. Id. Here, Miller was referring to Troy Plante's recantation.

---

[5] Miller testified that at "some point in 2005" he had "a friend" retain Susan James to represent him in post-conviction matters. [August Hearing, at 8]. James later clarified that it was in April 2005 when she first came in contact with Miller. Id. at 11.

On June 18, 2005, Maines received a letter from Plante wherein Plante expressed his desire to go ahead and sign the affidavit. [October Hearing, at 76]. Maines went to the prison for the third time to see Plante on July 14, 2005, and Plante signed the affidavit in Maines's presence. Id. at 78-81. On the same day, Maines sent the original affidavit to Susan James, one copy of the affidavit to Mullens, and ten copies of the affidavit to Miller, per Mullens' request. Id. at 81-83. Miller filed his § 2255 petition exactly one year later on July 14, 2006.[6] [Doc. #153].

II. Discussion

As noted above, the only issue before the Court is the timeliness of Miller's § 2255 petition. [Doc. #182]. This habeas statute provides that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of . . . (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(4). This statute, however, is "not a tolling provision . . . . Rather, it resets the limitations period's beginning date, moving it from the time when the conviction became final . . . to the later date on which the particular claim accrued." United States v. Loudner, 203 F. Supp. 2d 1083, 1093 (Dist. S.D. 2001) (quoting Wims v. United

---

[6]When questioned as to why he waited so long to file his habeas petition, Miller testified that he was operating under the advice of both fellow inmates and his attorney, Susan James, that "to legitimately file [a habeas petition] I needed . . . legitimate evidence, and until I had something verified, notarized, something legitimate that I could take to court and say here, I didn't have anything." [August Hearing, at 24-25].

States, 225 F.3d 186, 190 (2d Cir. 2000)). Exactly when the limitation period reset is at the heart of the instant dispute. According to the Government, the one year limitation period reset in March 2005 when Miller learned of the facts "supporting the claim presented as ground one of the motion, namely, that the government's trial witness, Troy Plante, committed perjury at trial." [Doc. #211, at 2]. Because Miller filed his habeas petition on July 14, 2006, the Government argues it is untimely. Miller, however, maintains that the one year limitation period was reset only upon obtainig Plante's signed affidavit on July 14, 2005. Because he filed his petition on July 14, 2006, one year later, he argues that it is timely.

The Court concludes that the one year limitation period under 28 U.S.C. § 2255(4) is reset when a petitioner obtains knowledge of the factual predicate supporting his claim, not the point at which the factual predicate is reduced to admissible, credible evidence. See United States v. Loudner, 203 F. Supp. 2d 1083, 1094-95 (Dist. S.D. 2001) (looking to the moment at which the petitioner obtained knowledge of the facts supporting his claim in addressing the issue of timeliness). Miller has failed to offer any authority, and the Court has found none, supporting a contrary construction.

With this understanding of 28 U.S.C. § 2255, it is clear that Miller's petition in the instant case is untimely. Miller learned of the factual predicate of his § 2255 claim by March 17, 2005, at the latest. As noted above, by this point in time Miller had received a letter from Plante in which Plante admitted that he had falsified his testimony and that he "felt terrible." [August

9

Hearing, at 12-13]. Miller knew by March 17, 2005, that Maines had met with Plante, that Plante had recanted and that the conversation had been recorded. Importantly, Miller had in his possession Plante's unsigned affidavit which Miller knew was the product of the meeting between Maines and Plante. Miller testified that there is "no doubt in my mind" that the statements in Plante's unsigned affidavit were truthful. [August Hearing, at 39]. It was on March 17, 2005, that Miller sent the correspondence, along with the forged March 13, 2005, affidavit to his mother, which were subsequently forwarded to their intended recipients. Accordingly, the Court finds that the one year limitations period began March 17, 2005, and expired March 17, 2006. Miller's July 14, 2006, petition is therefore untimely.

III. Conclusion

The Court has carefully reviewed the relevant evidence. In sum, the Court finds that Miller's 28 U.S.C. § 2255(4) petition for a writ of habeas corpus is untimely. Accordingly, this Court's Order dated October 25, 2006 [Doc. #165] granting Miller's motion for a certificate of appealability is VACATED. Upon reconsideration, Miller's motion for a certificate of appealability [Doc. #160] is DENIED.

The Clerk is directed to forward a copy of the Order to the United States Court of Appeals for the Eleventh Circuit.

SO ORDERED this _____ day of August, 2008.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE

10